IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PAUL SCHNEIDER,

                Plaintiff,

v.                                                           OPINION and ORDER

GEORGIA KOSTOLIHRYZ, ANTHONY HENTZ,            19-cv-756-jdp
DEBRA TIDQUIST, and TAMMY MAASSEN,

                Defendants.

---

Plaintiff Paul Schneider, appearing pro se, is a prisoner at Jackson Correctional Institution. Schneider alleges that defendant prison officials failed to properly treat his chronic shoulder pain. I previously granted Schneider leave to proceed on Eighth Amendment claims against several defendants. *See* Dkt. 9. But I denied Schneider leave to proceed against Deputy Warden Chris Buesgen and Warden Lizzie Tegels in part because he didn't explain how those high-ranking non-medical-professional officials were responsible for his medical care. *Id.* at 4.

Schneider has responded with what he calls a "letter of clarification," Dkt. 14, and a proposed amended complaint, Dkt. 15. Defendants have filed a motion for partial summary judgment, contending that Schneider failed to exhaust his administrative remedies for his Eighth Amendment claim against one of the defendants.

A. **Schneider's amended complaint**

I'll construe Schneider's proposed amended complaint to include a motion for leave to amend his complaint and I'll grant that motion. I'll also consider his "letter of clarification" to be part of his amended complaint. In his letter, Schneider asks me to reconsider my decision on his claims against Buesgen and Tegels. Schneider contends that both Buesgen and Tegels were partly responsible for his medical care, and he submits a DOC chart that he says shows

the "chain of command" for inmates to complain about various types of issues. Dkt. 14-1. That chart shows that the deputy warden's office is the "third level" of review for medical issues and that the warden is the final level of review for any issue. *Id.* Because I must accept a plaintiff's allegations as true in screening his allegations, I'll accept that this chart shows that Buesgen and Tegels were indeed responsible for responding to Schneider's complaints as he moved through the chain of command. I'll grant Schneider leave to proceed on an Eighth Amendment claim against Buesgen for failing to respond to his complaint of inadequate medical care. But I won't grant Schneider leave to proceed against Tegels because Schneider alleges that Tegels forwarded his correspondence to medical officials, which shows that Tegels did not consciously disregard the problem. *See* Dkt. 9, at 4.

Schneider also now alleges that defendants were negligent in failing to care for his shoulder pain. A claim for medical malpractice or negligence includes the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860 (2001). For the same reasons that I allowed Schneider to proceed with Eighth Amendment claims against defendants Kostolihryz, Tidquist, Maassen, Hentz, and Buesgen, I'll allow him to proceed on medical malpractice or negligence claims against them. The claims against the medical officials are likely better characterized as medical malpractice claims. Schneider should be aware that to establish a prima facie medical negligence claim, a plaintiff must show that defendants failed to use the required degree of skill exercised by an average respective medical professional, that the plaintiff was harmed and that there was a causal connection between defendants' failure and the plaintiff's harm. Wis JI–Civil 1023.

## B. Defendants' motion regarding exhaustion

Defendants have filed a motion for partial summary judgment contending that Schneider failed to exhaust the administrative remedies for his Eighth Amendment claim against defendant nurse Anthony Hentz. Schneider alleges that Hentz intercepted his complaints to defendant Maassen about nurses' delays in making follow-up appointments and failing to renew his medications.

Under the Prison Litigation Reform Act, prisoners must exhaust all available administrative remedies before filing a lawsuit in federal court about prison conditions. 42 U.S.C. § 1997e(a). To comply with 1997e(a), a prisoner must take each step in the administrative process, *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. To exhaust administrative remedies in Wisconsin, inmates must follow the inmate complaint review process set forth in the Wisconsin Administrative Code Chapter DOC 310. The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). Failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be proven by the defendants. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).

The parties agree about the grievance that is relevant to Schneider's claim against Hentz: grievance No. JCI-2019-2740. In this grievance, Schneider stated that he submitted "kites" to defendant Health Services Unit Manager Maassen about his medical complaints, but

3

that he either received no response from Maassen, or Hentz responded to them himself rather than let his supervisor see them. Dkt. 21-2, at 9.

Defendants raise two arguments in support of their motion. First, they argue that Schneider failed to properly exhaust his claim against Hentz because he didn't follow the DOC regulation limiting grievances to "only one clearly identified issue," Wis. Admin. Code § DOC 310.07(5), because he included complaints against both Maassen and Hentz, and the institution complaint examiner then framed the grievance as being against Maassen. But the complaint examiner didn't dismiss the grievance for the procedural reason that it failed to comply with § DOC 310.07(5). Instead, part of the examiner's rationale for dismissal on the merits of the grievance was that nurses are instructed to respond to correspondence from inmates "as much as possible," which seems to be a response to Schneider's complaint that Nurse Hentz responded to his correspondence meant for Maassen. *See* Dkt. 21-2, at 2. Exhaustion cannot be predicated on a grievance's procedural shortcomings if the grievance examiner overlooks the shortcomings and rules on the merits of the claim. *See, e.g., Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) ("Failure to comply with administrative deadlines dooms the claim except where the institution treats the filing as timely and resolves it on the merits."). So I won't grant defendants' motion on this ground.

Defendants' second argument is that Schneider failed to complete the exhaustion process by appealing the dismissal of his grievance. The DOC grievance records do not show that Schneider appealed the dismissal. Schneider says that he did appeal, and he produces a copy of the appeal that he says he placed in the prison mailbox to be sent by U.S. Mail. Dkt. 22-1. Although Schneider did not receive any word that his appeal was received and there was no decision issued by the corrections complaint examiner (CCE) or office of the DOC

4

secretary, he says that he considered his remedies to be exhausted because of a DOC rule printed on his appeal form: "If the inmate does not receive the secretary's written decision within 90 days of the date of receipt of the appeal in the CCE's office, the inmate shall consider the administrative remedies to be exhausted, unless the time has been extended under sub. (1)." Wis. Admin. Code § DOC 310.13(4); *see also* Dkt. 22-1, at 2.

Defendants say that because inmates are notified when the CCE's office receives an appeal, Schneider should have inquired into his appeal's status once he failed to receive that notification. They say that Schneider had filed other appeals that generated such a notice, so he should have known to double check. And they cite to *Lockett v. Bonson*, 937 F.3d 1016 (7th Cir. 2019), a case in which the court of appeals concluded that a Wisconsin inmate had failed to exhaust his administrative remedies even though the inmate said that he had filed an appeal.

But the *Lockett* ruling depended in large part on DOC grievance regulations no longer in place. As defendants note in their reply brief, "because the CCE was required by Wisconsin regulation to provide a receipt within 5 working days of receiving an appeal, the court held that the prisoner was 'obliged to regard the absence of a receipt as a red flag; he should have undertaken, through the complaint procedure, an inquiry to ascertain why he had not received this important document.'" Dkt. 23, at 4 (quoting *Lockett*, 937 F.3d at 1027). But the rule requiring the CCE to notify the prisoner that the CCE has received the grievance, Wis. Admin. Code § DOC 310.13(4) (2017), was removed in a 2018 amendment. Defendants argue that even in the absence of the CCE-receipt-notice regulation, it is still the DOC's custom to notify inmates, and so Schneider should have known that something was amiss and he should then have taken action. This is a less persuasive argument because *Lockett* was grounded in cases like *Pozo*, under which prisoners are required to follow prison grievance *rules*. Defendants don't

5

point to any authority suggesting that exhaustion hinges on an inmate's understanding of how to respond to a prison's unofficial practice or prison staff's failure to comply with that unofficial practice.

Defendants might still be entitled to partial summary judgment if they could prove that Schneider knew that the CCE had not received the appeal, because that would undercut his argument that under the current version of § DOC 310.13(4), he could consider his appeal exhausted when didn't receive a final decision by 90 days after the CCE's *receipt* of the appeal. Defendants might also be able to show that Schneider didn't actually submit the appeal he says he did. But defendants didn't explain the unofficial receipt practice and Schneider's apparent familiarity with that process until their reply brief, so Schneider hasn't had a chance to address those assertions. The bottom line is that the exhaustion issue turns on disputed facts.

I conclude that it's appropriate to hold a factfinding hearing under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), to resolve these factual issues. I will direct the clerk of court to schedule a *Pavey* hearing. Schneider should be prepared to present any evidence he has that supports his version of events. He should also consider whether there are any witnesses who can corroborate his version of events. He should refer to the court's preliminary pretrial conference order, Dkt. 17, for guidance on how to call witnesses to appear at the hearing.

Because the risk of coronavirus transmission makes in-person hearings unduly risky, I'll conduct the *Pavey* hearing by Zoom.

ORDER

IT IS ORDERED that:

1. The clerk of court is directed to add Chris Buesgen to the caption.

2. Plaintiff Paul Schneider's motion for leave to amend his complaint, Dkt. 15, is GRANTED.

3. Plaintiff is now granted leave to proceed on Eighth Amendment medical care and Wisconsin-law medical malpractice or negligence claims against defendants Kostolihryz, Tidquist, Maassen, Hentz, and Buesgen.

4. The clerk of court is directed to set a hearing under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), to resolve the factual disputes over plaintiff's exhaustion of his administrative remedies.

5. The parties may have until September 28, 2020, to inform the court about the identities of any proposed witnesses they intend to call.

Entered September 1, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge